Opinion issued November 12, 2009
















In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00626-CR

 





FRANCIS CHERRY JR., Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from 177th District Court

Harris County, Texas

Trial Court Cause No. 1131289






MEMORANDUM OPINION

 Appellant, Francis Cherry, appeals from a judgment sentencing him to 25 years
in prison for aggravated assault. See Tex. Penal Code Ann. § 22.01 (Vernon 2007). 
Appellant pleaded not guilty. The jury found him guilty and determined his sentence. 
In two issues, appellant contends the trial court erred by (1) admitting complainant's
out-of-court statement through a testifying police officer, and (2) denying his motion
for mistrial following testimony suggesting appellant was in jail. We conclude the
trial court did not abuse its discretion by admitting the out-of-court statement and
denying the motion for mistrial. We affirm the judgment of the trial court. 

Background


 In August 2007, Officer Billeaud of the Baytown Police Department, along
with three other officers, responded to a disturbance at a house on South Second
Street in Baytown. Officer Billeaud found complainant at the house upset, crying and
bleeding from her face. When Officer Billeaud asked her if the person that injured
her was still inside, she indicated yes and pointed to appellant's location in the attic. 
Officer Billeaud quickly apprehended appellant.

 At trial, the State presented the testimony of Officer Billeaud, who testified that
complainant looked frightened, was crying, and told him "she had gotten assaulted." 
The State also presented the testimony of complainant's 13-year-old son, who saw
appellant hit complainant repeatedly in her body and face, hold a knife against her
face, and threaten to kill her. In response to the State's question asking what
happened next, complainant's son said "[appellant] started talking about how
everyday he worked out in the jailhouse."Admission of Out-Of-Court Statements 

 In his first issue, appellant contends the trial court erred by improperly
admitting hearsay statements made by complainant. Specifically, appellant objects
to Officer Billeaud's testimony that complainant told him she was assaulted. The
State argues complainant's statements are admissible under the excited utterance
hearsay exception.

 A. Standard of Review for Evidentiary Rulings

 We review a trial court's decision to admit or exclude evidence under an abuse
of discretion standard. Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). 
We will not reverse a trial court's ruling unless that ruling falls outside the zone of
reasonable disagreement. Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App.
2001). Therefore, we address appellant's evidentiary challenge by determining
whether the trial court's ruling was outside the zone of reasonable disagreement. See
id. An appellate court must uphold the trial court's ruling if it is reasonably
supported by the record and is correct under any theory of law applicable to the case. 
State v. Ross, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000).

 B. Applicable Law for Admission of Out-Of-Court Statements

 Hearsay is a statement, other than one made by the declarant while testifying
at trial or hearing, offered into evidence to prove the truth of the matter asserted. 
Tex. R. Evid. 801(d). For hearsay to be admissible, the statement must fit into an
exception provided by a statute or the Rules of Evidence. Tex. R. Evid. 802; see also
Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).

 Rule 803(2) of the Texas Rules of Evidence sets out the excited utterance
exception to hearsay. See Tex. R. Evid. 803(2). An excited utterance is a statement
relating to a startling event or condition made while the declarant was under the stress
of excitement caused by the event or condition. See id. "The exception is based on
the assumption that the declarant is not, at the time of the statement, capable of the
kind of reflection that would enable him to fabricate information." Apolinar v. State,
155 S.W.3d 184, 186 (Tex. Crim. App. 2005). "In other words, the statement is
trustworthy because it represents an event speaking through the person rather than the
person speaking about the event." Zuliani, 97 S.W.3d at 595. 

 To determine whether a hearsay statement is admissible as an excited utterance,
the court may consider (1) the length of time between the occurrence and the
statement, (2) the declarant's demeanor, (3) whether the statement is made in
response to a question, and (4) whether the statement is self-serving. Apolinar, 155
S.W.3d at 190; see also Clark v. State, 282 S.W.3d 924, 929-30 (Tex.
App.--Beaumont 2009, no pet.). "The critical determination is 'whether the
declarant was still dominated by the emotions, excitement, fear, or pain of the event'
or condition at the time of the statement." Zuliani, 97 S.W.3d at 596 (quoting
McFarland v. State, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)). A reviewing
court must determine whether the statement was made "under such circumstances as
would reasonably show that it resulted from impulse rather than reason and
reflection." Id. (quoting Fowler v. State, 379 S.W.2d 345, 347 (Tex. Crim. App.
1964)).

 C. Analysis

 Appellant contends that complainant's statement regarding her assault was
hearsay that does not meet the excited utterance exception. Contrary to appellant's
contention, the State adequately developed the predicate for the excited utterance
exception. 

 (1) Length of Time Between Occurrence and Statement

 Although the record is silent as to the amount of time between the event and the
statement, Officer Billeaud's response to an emergency call may be assumed to be
reasonably short. See Davis v. State, 268 S.W.3d 683, 703 (Tex. App.--Fort Worth
2008, pet. ref'd) (declarant's upset appearance reasonably infers that officer's
emergency response time was fairly quick). Furthermore, complainant was still
bleeding from her injuries when she spoke with Officer Billeaud. See Clark, 282
S.W.3d at 930 (excited utterance found when declarant was bleeding from gun shot
wound when officers arrived on scene). This factor suggests complainant's statement
was still dominated by the excitement and emotions of the event despite the time lapse
between the statement and the event.

 (2) Declarant's Demeanor

 Complainant's demeanor suggests her statement was an excited utterance. 
Appellant was in complainant's home when complainant answered Officer Billeaud's
knock on the door. At no point was complainant separated from appellant. See
Zuliani, 97 S.W.3d at 596 (holding statement made 20 hours after stimulus event was 
excited utterance because declarant appeared scared and had not been separated from
her attacker since event occurred). According to Officer Billeaud, when complainant
told him "she had gotten assaulted," she was "crying," "scared, frightened," and
seemed as though she had just gone though something traumatic. Complainant's
demeanor was consistent with a person still under the stress of excitement of the event
because she had not been separated from appellant since the assault and was scared,
frightened, and crying. See id.

 (3) Whether Statement Is in Response to Question

 It is unclear from the record if complainant made her statement in response to
a question. However, there is no indication that Officer Billeaud was attempting to
direct complainant's statement. See Lane v. State, 174 S.W.3d 376, 383-84 (Tex.
App.--Houston [14th Dist.] 2005, pet. ref'd) (excited utterance found when the
interaction did not display "the calmness of a controlled inquiry"). 

 (4) Whether Statement Was Self-Serving

 The complainant's statement was not self-serving. Complainant was in fear of
danger and not motivated by revenge. See Apolinar, 155 S.W.3d at 190-91 (no self-serving motive found when appellant suggested complainant wanted to get even for
prior attack). She did not stand to gain anything from the officer but protection from
appellant. Compare Allridge v. State, 762 S.W.2d 146, 152-53 (Tex. Crim. App.
1988) (holding statement made to detective 18 hours after shooting was self-serving
because it resulted from custodial interrogation and was made after reflection and
deliberation). This factor also weighs in favor of admissibility under the excited
utterance exception.

 The record shows Officer Billeaud was responding to an emergency call. When
he spoke with complainant, she was upset, crying, and still bleeding from the assault. 
Moreover, appellant was still in complainant's home. At no point between the assault
and the statement was complainant separated from appellant. Complainant's statement
was not in response to a controlled inquiry and was not self-serving. From these
factors, the trial court reasonably concluded the out-of-court statement was an excited
utterance and unlikely fabricated. See Apolinar, 155 S.W.3d at 186. We hold the trial
court did not abuse its discretion by overruling appellant's objection to the out-of-court statement. We overrule appellant's first issue.

Motion for Mistrial

 In his second issue, appellant contends the trial court erred by denying his
motion for mistrial that he made when the State's witness told the jury that appellant
said he worked out in jail. The State argues that error was not preserved for review
because appellant's motion was for a directed verdict and not a mistrial. If error is
preserved, the State argues that jury instructions to disregard cured any error.

 A. Applicable Law for Preservation of Error

 To preserve error for appellate review, the record must show that the complaint
"stated grounds for the ruling that the complaining party sought from the trial court
with sufficient specificity to make the trial court aware of the complaint, unless the
specific grounds were apparent from the context." Tex. R. App. 33.1(a)(1)(A). The
attorney has the burden to make an objection with enough clarity for the court to
understand its nature and to obtain an adverse ruling. Crocker v. State, 248 S.W.3d
299, 303-04 (Tex. App.--Houston [1st Dist.] 2007, pet. ref'd).

 The policy of requiring specific objections is based on two principles. Zillender
v. State, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977). First, the trial judge must be
informed of the basis of the objection and afforded an opportunity to rule on it. Id. 
Second, the opposing counsel must be afforded an opportunity to rebut the objection
or supply other testimony. Id. "[W]here the correct ground of exclusion [is] obvious
to the judge and opposing counsel, no waiver results from a general or imprecise
objection." Id. If it seems from the context that a party failed to effectively
communicate its desire, the appellate court "should not hesitate to hold that appellate
complaints arising from the event have been lost." Lankston v. State, 827 S.W.2d 907,
909 (Tex. Crim. App. 1992). However, the appellant should be allowed to reach the
merits of a complaint without reading a "special script to make [his] wishes known." 
Id.

 B. Preservation of Error Analysis 

 The traditional and preferred procedure to preserve error for a party seeking a
mistrial is (1) to object, (2) to request an instruction to disregard if the prejudicial
event has occurred, and (3) to move for a mistrial if a party thinks an instruction to
disregard was not sufficient. Young v. State, 137 S.W.3d 65, 69 (Tex. Crim. App.
2004). However, this sequence is not essential to preserve complaints for appellate
review. Id. The essential requirement for preservation of error for the appellate court
is a timely, specific request, which is refused by the trial court. See Tex. R. App. P.
33.1; Young, 137 S.W.3d at 69.

 The record shows appellant's counsel at trial substantially followed the
preferred method. He objected to the improper response. Then the trial court, sua
sponte, instructed the jury to disregard. Preservation of error is not lost because the
trial court instructed the jury to disregard before appellant's counsel could request an
instruction. See Young, 137 S.W.3d at 70. 

 Rather than move for a "mistrial," appellant's counsel moved for an "instructed
verdict." The record shows the following:

 [State] So what happened then?

 [Complainant's son] He started talking about how everyday he
worked out in the jailhouse.

 

 MR. BUNDICK: Objection, Your Honor.

 THE COURT: Sustained. Disregard the answer of the last
witness and do not consider it for any purpose.

 

 MR. BUNDICK: Move for an instructed verdict.

 THE COURT: That's denied.

 An instructed verdict is not the equivalent of a mistrial. An instructed verdict
is an evidentiary sufficiency challenge. The trial court may properly issue an
instructed verdict if the State fails to prove a prima facie case of the offense alleged
in the complaint. See Tex. Code Crim. Proc. Ann. art. 45.032. The test for review
of a motion for instructed verdict made after the close of all evidence is whether, in
a light most favorable to the verdict, there is any evidence which the jury could believe
that would support that verdict. Chase v. State, 573 S.W.2d 247, 249 n.1 (Tex. Crim.
App. 1978).

 A motion for mistrial challenges prejudicial error, not evidentiary sufficiency. 
Mistrial is a remedy appropriate for a narrow class of highly prejudicial and incurable
errors. Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). It is a device used
to halt trial proceedings when error is so prejudicial that expenditure of further time
and expense would be wasteful and futile. Id. In other words, a mistrial is a procedure
that conserves the resources that would be expended in completing the trial as well as
those required for an appeal should a conviction occur. Young, 137 S.W.3d at 69.

 The essential issue is whether appellant's request for an instructed verdict is
apparent from the context to adequately be a substitute for a motion for mistrial. See
Tex. R. App. P. 33.1(a)(1)(A). In the context of this exchange, it is. See Carmen v.
State, 276 S.W.3d 538, 544 (Tex. App.--Houston [1st Dist.] 2008, pet. ref'd) (holding
appellant's objection to omission of self-defense from jury charge placed trial court
on notice that he was requesting charge of deadly force in defense of one's person). 
It appears the trial court understood appellant was asking for a mistrial because the
exchange between the trial judge and appellant's counsel immediately followed the
objectionable statement and followed the preferred sequence for requesting a mistrial. 
See Young, 137 S.W.3d at 69. Additionally, the request for instructed verdict occurred
in the middle of a question sequence rather than at the close of the State's case, which
suggests the trial court understood the request was for a mistrial because of the timing
of when it was asserted. Appellant's counsel ordinarily would not seek an instructed
verdict at this point in the trial. See Dixon v. State, 928 S.W.2d 564 (Tex. Crim. App.
1996) (objection "for the reasons stated previously" ruled to be sufficient); Gains v.
State, 966 S.W.2d 838, 841 (Tex. App.--Houston [14th Dist.] 1998, pet. ref'd)
(objection to juror's question ruled sufficient to cover whole process of jurors asking
questions). Appellant's counsel simply misspoke. See Samuel v. State, 688 S.W.2d
492, 495-96 (Tex. Crim. App. 1985) (objection ruled sufficient despite seeming to
have been "terse and almost in the nature of an afterthought"). We conclude the trial
court understood appellant was requesting a mistrial because (1) the request followed
the sequence for preserving error based on a mistrial and (2) the request could not
reasonably have been a motion for instructed verdict, which is a motion that ordinarily
comes at the close of the State's case and not in the middle of evidence. We hold the
appellant's motion was adequately preserved for appellate review.

 C. Applicable Law for Review of Denial of Motion for Mistrial

 We review a trial court's ruling denying a mistrial under an abuse-of-discretion
standard. See Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). The
determination of whether a given error necessitates a mistrial must be made by
examining the particular facts of the case. Id. at 567; Hernandez v. State, 805 S.W.2d
409, 414 (Tex. Crim. App. 1990). A trial court may properly exercise its discretion
to declare a mistrial if an impartial verdict cannot be reached or if a verdict of
conviction could be reached but would have to be reversed on appeal due to an
obvious procedural error. Ladd, 3 S.W.3d at 567.

 Most often, error from an improper statement can be cured or rendered harmless
by its withdrawal or an instruction to disregard. See Hernandez, 805 S.W.2d at
413-14; Brossette v. State, 99 S.W.3d 277, 282-83 (Tex. App.--Texarkana 2003, pet.
ref'd, untimely filed). "Only when it is apparent that an objectionable event at trial is
so emotionally inflammatory that curative instructions are not likely to prevent the jury
being unfairly prejudiced against the defendant may a motion for mistrial be granted." 
Bauder v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996).

 D. Denial of Mistrial Analysis

 "Under the Texas Rules of Evidence, evidence of other crimes, wrongs, or acts
is not admissible 'to prove the character of a person in order to show action in
conformity therewithin.'" De La Paz v. State, 279 S.W.3d 336, 342 (Tex. Crim. App.
2009) (quoting Tex. R. Evid. 404(b)). However, a witness's inadvertent reference to
an extraneous offense is generally cured by a prompt instruction to disregard. Kipp
v. State, 876 S.W.2d 330, 339 (Tex. Crim. App. 1994). The exception occurs in
extreme cases when (1) the statement is of such a character as to suggest the
impossibility of withdrawing the impression produced and (2) is clearly calculated to
inflame the minds of the jury. Hernandez, 805 S.W.2d at 414.

 (1) Possibility of Withdrawing the Impression

 First, we consider if the jury instruction to disregard cured the witness's
reference to appellant's activities in jail. A brief, general statement regarding prior
incarceration does not suggest the impossibility of jurors disregarding the statement. 
See Tennard v. State, 802 S.W.2d 678, 685-86 (Tex. Crim. App. 1990) (holding jury
instruction to disregard cured witness's statement that he first saw defendant when
defendant got out of jail); Sperling v. State, 924 S.W.2d 722, 724-25 (Tex.
App.--Armarillo 1996, pet. ref'd) (holding instruction to disregard sufficient to cure
error when witness mentioned defendant would visit after defendant got out of jail). 
Therefore, the trial court's prompt jury instruction to disregard the statement cured the
inadvertent reference to appellant's prior incarceration. See Tennard, 802 S.W.2d at
685-86.

 (2) Whether Statement Was Calculated to Inflame the Jury

 Next, we consider whether witness's statement was intended to inflame the jury. 
The State's non-leading question "so what happened then" was not intended to elicit
a specific response. See Brossette, 99 S.W.3d at 282-83 (question asking witness if
he had prior contact with appellant was intended to illicit answer concerning prior CPS
investigation). Nor was the witness's statement an attempt to inflame the jury.
Compare Walker v. State, 610 S.W.2d 481, 484 (Tex. Crim. App. 1980) (holding
prosecutor's question whether appellant was nervous "when he committed the offense
of incest with his daughter" required granting motion for mistrial because it was so
manifestly improper and prejudicial that instructions to jury could not cure harm). 

 We conclude this is not an extreme case where the statement is clearly
calculated to inflame the minds of the jury and is of such a character as to suggest the
impossibility of withdrawing the impression produced. See Hernandez, 805 S.W.2d
at 414. We hold the trial court did not err in denying appellant's motion for mistrial. 
We overrule appellant's second issue.

 Conclusion

 We affirm the trial court's judgment.



 Elsa Alcala

 Justice


Panel consists of Justices Keyes, Alcala, and Hanks.


Do not publish. See Tex. R. App. P. 47.2(b).